IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


CYNTHIA PERRY,

                    Plaintiff,

vs.                                      Case No. 10-1006-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff
supplemental security income payments.  The matter has been fully
briefed by the parties.

## I.  General legal standards

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by
such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence

supports the Commissioner's decision is not simply a quantitative

exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it really constitutes mere conclusion.  Ray

v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court

is not to reweigh the evidence, the findings of the Commissioner

will not be mechanically accepted.  Nor will the findings be

affirmed by isolating facts and labeling them substantial

evidence, as the court must scrutinize the entire record in

determining whether the Commissioner's conclusions are rational.

Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The

court should examine the record as a whole, including whatever in

the record fairly detracts from the weight of the Commissioner's

decision and, on that basis, determine if the substantiality of

the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be

determined to be under a disability only if the claimant can

establish that they have a physical or mental impairment expected

to result in death or last for a continuous period of twelve

months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental

impairment or impairments must be of such severity that they are

not only unable to perform their previous work but cannot,

considering their age, education, and work experience, engage in

2

any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On June 23, 2008, administrative law judge (ALJ) Michael R. Dayton issued his decision (R. at 16-24). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since September 27, 2005, the application date (R. at 18). At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the cervical spine, mild arthritic changes to the left knee, history of right ankle fracture with multiple surgeries and fusion, history of

right leg fracture, hypertension, and possible seizure disorder
(R. at 18).  At step three, the ALJ determined that plaintiff's
impairments do not meet or equal a listed impairment (R. at 19).
After determining plaintiff's RFC (R. at 19), the ALJ found at
step four that plaintiff is unable to perform any past relevant
work (R. at 23).  At step five, the ALJ found that plaintiff
could perform other jobs that exist in significant numbers in the
national economy (R. at 23-24).  Therefore, the ALJ concluded
that plaintiff was not disabled (R. at 24).

**III.  Did the ALJ err in his finding that plaintiff's impairments
did not meet listed impairment 1.02A?**

At step three, plaintiff has the burden of demonstrating,
through medical evidence, that his/her impairments meet all of
the specified medical criteria contained in a particular listing.
Riddle v. Halter, 10 Fed. Appx. 665, 667 (10th Cir. March 22,
2001).  An impairment that manifests only some of those criteria,
no matter how severely, does not qualify.  Sullivan v. Zebley,
493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990).  Because the
listed impairments, if met, operate to cut off further inquiry,
they should not be read expansively.  Caviness v. Apfel, 4 F.
Supp.2d 813, 818 (S.D. Ind. 1998).

The ALJ is required to discuss the evidence and explain why
he found that the plaintiff was not disabled at step three.  This
court should not properly engage in the task of weighing evidence

in disability cases.  The court's function is only to review the
Commissioner's decision to determine whether his factual findings
are supported by substantial evidence and whether he applied the
correct legal standards.  In the absence of ALJ findings
supported by specific weighing of the evidence, the court cannot
assess whether relevant evidence adequately supports the ALJ's
conclusion that the plaintiff did not meet or equal any listed
impairment.  <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009 (10th Cir.
1996).

Listed impairment 1.02A states as follows:

> *Major dysfunction of a joint(s) (due to any
> cause):* Characterized by gross anatomical
> deformity (e.g., subluxation, contracture,
> bony or fibrous ankylosis, instability) and
> chronic joint pain and stiffness with signs
> of limitation of motion or other abnormal
> motion of the affected joint(s), and findings
> on appropriate medically acceptable imaging
> of joint space narrowing, bony destruction,
> or ankylosis of the affected joint(s).  With:
>
> A.  Involvement of one major peripheral
> weight-bearing joint (i.e., hip, knee, or
> ankle), resulting in inability to ambulate
> effectively, as defined in 1.00B2b.
>
> 1.00B2b *What we mean by Inability to Ambulate
> Effectively*
>
> (1) *Definition*. Inability to ambulate
> effectively means an extreme limitation of
> the ability to walk; i.e., an impairment(s)
> that interferes very seriously with the
> individual's ability to independently
> initiate, sustain, or complete activities.
> **Ineffective ambulation is defined generally
> as having insufficient lower extremity**

6

**functioning (see 1.00J) to permit independent
ambulation without the use of a hand-held
assistive device(s) that limits the
functioning of <u>both</u> upper extremities**...

(2) *To ambulate effectively*, individuals must
be capable of sustaining a reasonable walking
pace over a sufficient distance to be able to
carry out activities of daily living.  They
must have the ability to travel without
companion assistance to and from a place of
employment or school.  Therefore, examples of
ineffective ambulation include, but are not
limited to, the inability to walk without the
use of a walker, two crutches or two canes,
the inability to walk a block at a reasonable
pace on rough or uneven surfaces, the
inability to use standard public
transportation, the inability to carry out
routine ambulatory activities, such as
shopping and banking, and the inability to
climb a few steps at a reasonable pace with
the use of a single hand rail.  The ability
to walk independently about one's home
without the use of assistive devices does
not, in and of itself, constitute effective
ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2010 at 458, 454, emphasis
added).

The ALJ provided the following explanation for his finding
that plaintiff's impairments did not meet listed impairment 1.02:

Although the claimant has musculoskeletal
impairments, she does not have an "extreme"
limitation in the ability to walk or perform
fine and gross movements effectively as
defined in section 1.02...The claimant has a
history of right ankle and right leg fracture
with these injuries determined to be stable.
She does have mild degenerative disease of
the left knee and cervical spine.  However,
there is no history of extreme limitation as
required by this listing.

7

(R. at 19).  Plaintiff, citing to 1.02A, argues that the ALJ did not make sufficient findings and failed to adequately explain the findings he made (Doc. 11 at 9-10).

The ALJ found that plaintiff does not have an extreme limitation in the ability to walk, which is required to demonstrate that a claimant's impairment meets listed impairment 1.02A.  Ineffective ambulation, or an extreme limitation in the ability to walk, is generally defined as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device that limits the use of <u>both</u> upper extremities (e.g., the inability to walk without the use of a walker, two crutches or two canes).  Other examples of ineffective ambulation include the inability to use standard public transportation.

As noted above, plaintiff has the burden of proving that her impairments meet or equal a listed impairment.  However, plaintiff fails to cite to any medical opinion evidence that her impairments meet listed impairment 1.02A.  Furthermore, Dr. Daily, her treating physician, released her to work on May 1, 2007, noting only that she may need frequent breaks to rest the right leg and ankle (R. at 416).  He stated on April 30, 2007 that he was releasing her to "full activities today" (R. at 415).  He further indicated that she is ambulating without any assistive devices, but he wrote her a prescription for a cane that she can

use at times (R. at 415).

As noted above, ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the use of both upper extremities.  The evidence in this case is that plaintiff sometimes uses one cane; there is no evidence that she requires the use of a hand-held assistive device that limits the use of both upper extremities.

Another definition of ineffective ambulation is the inability to use standard public transportation.  At the hearing, plaintiff testified that she had to walk six blocks to catch the bus that day (R. at 657, 656).

The ALJ found that there is no evidence of extreme limitation in her ability to walk.  The court finds that plaintiff has failed to point to substantial evidence of her inability to ambulate effectively, or an extreme limitation in her ability to walk.  Furthermore, the evidence in this case, including from her treatment providers, also does not support plaintiff's assertion that she is unable to ambulate effectively.  The court finds that the ALJ's step three finding that plaintiff's impairment does not met listed impairment 1.02A is supported by substantial evidence.

## IV.  Did the ALJ err in making his RFC findings?

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each

conclusion, citing specific medical facts...and nonmedical
evidence." The ALJ must explain how any material inconsistencies
or ambiguities in the evidence in the case record were considered
and resolved. The RFC assessment must always consider and
address medical source opinions. If the RFC assessment conflicts
with an opinion from a medical source, the ALJ must explain why
the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7.
SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1);
<u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891
n.9, 107 L. Ed.2d 967 (1990); <u>Nielson v. Sullivan</u>, 992 F.2d 1118,
1120 (10th Cir. 1993).

    The ALJ made the following RFC findings:

> After careful consideration of the entire
> record, the undersigned finds that the
> claimant has the residual functional capacity
> to perform a range of work with the ability
> to lift and carry 20 pounds occasionally and
> 10 pounds frequently, stand/walk (with normal
> breaks) for a total of at least 2 hours in an
> 8 hour workday 30 minutes maximum at one
> time. Sit (with normal breaks) about 6 hours
> in an 8 hour workday, push and pull same
> restrictions as lift and carry. Occasionally
> climb ramps/stairs, but never use
> ladders/ropes/scaffolds. Balancing, stooping,
> kneeling, crawling are all limited to
> occasional, never on crouching. Overhead
> reaching limited to occasionally due to the
> neck. The claimant should avoid even moderate
> exposure to extreme cold, fumes, odors,
> dusts, gases, poor ventilation. The claimant
> has slight limitations in her ability to
> understand, remember and carry out short,
> simple and detailed instructions. The
> claimant has slight limitations in her
> ability to respond to work pressures in a

usual work setting, as well as respond
appropriately to changes in a routine work
setting. Slight is defined as some mild
limitations in the area but the individual
can function well.

(R. at 19).

First, plaintiff argues that the ALJ erred by failing to
mention the opinions of Dr. Daily, a treating physician. As
noted above, Dr. Daily stated on April 30, 2007 that plaintiff
was released to "full activities" that day. He indicated that
she is ambulating without any assistive devices, but that he had
prescribed a cane for plaintiff "that she can use at times" (R.
at 415). He stated that she may return to work on May 1, 2007,
but may need frequent breaks to rest the right leg and ankle (R.
at 416). The ALJ did not expressly mention these medical reports
by Dr. Daily.

The record must demonstrate that the ALJ considered all of
the evidence, but an ALJ is not required to discuss every piece
of evidence. Rather, in addition to discussing the evidence
supporting his decision, the ALJ also must discuss the
uncontroverted evidence he chooses not to rely upon, as well as
significantly probative evidence that he rejects. Clifton v.
Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996). An ALJ must
evaluate every medical opinion in the record, although the weight
given to each opinion will vary according to the relationship
between the disability claimant and the medical professional.

When an ALJ rejects a treating physician's opinion, he must articulate "specific, legitimate reasons for his decision." An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion. <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1215 (10th Cir. 2004). Even on issues reserved to the Commissioner, including plaintiff's RFC and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored. Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3. It is clear legal error to ignore a medical opinion. <u>Victory v. Barnhart</u>, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005).

According to SSR 96-8p:

> If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

1996 WL 374184 at *7. Furthermore, according to SSR 96-5p:

> Adjudicators must weigh medical source statements under the rules set out in 20 CFR 404.1527 and 416.927, providing appropriate explanations for accepting or rejecting such opinions.

1996 WL 374183 at *5.

The key question is therefore whether the RFC assessment conflicts with the opinion of Dr. Avery. The ALJ's RFC findings indicate that plaintiff can only stand/walk for a total of 2 hours in an 8 hour workday, 30 minutes maximum at one time (R. at 19). The ALJ noted that plaintiff had testified that she could

12

stand for 25-30 minutes at a time (R. at 21, 651).  The ALJ found
that plaintiff credibly experienced pain in the right ankle and
leg with prolonged standing or walking, but further found that
the evidence did not establish an inability to do a range of
sedentary work (R. at 22-23).  With the RFC limitations provided
by the ALJ, the vocational expert (VE) limited plaintiff to
sedentary work (R. at 160).  Sedentary work is defined as work
that involves sitting, but that also requires the ability to
occasionally stand and walk.  20 C.F.R. § 404.1567(a).

Thus, plaintiff is limited to work that primarily involves
sitting.  Plaintiff only has to stand/walk for a maximum of 2
hours in an 8 hour workday, and consistent with her testimony,
she only has to stand/walk for no more than 30 minutes at a time.
Dr. Daily released plaintiff on April 30, 2007 to "full
activities," noting that she was ambulating without any assistive
device, but prescribed for her a cane that she could use at
times.  He released her to work, noting that she would need
frequent breaks to rest the right leg and ankle.  When plaintiff
is seated, her right leg and ankle are at rest.  The ALJ's
finding that plaintiff can stand/walk for 2 hours in an 8 hour
day is not clearly inconsistent with the opinion of Dr. Daily,
and the ALJ's further finding that she only had to stand/walk for
no more than 30 minutes at a time is consistent with plaintiff's
own testimony.  On these facts, the court finds that the RFC

assessment does not clearly conflict with the opinions of Dr. Daily.

Furthermore, plaintiff provides no evidence that the opinions of Dr. Daily clearly conflict with the RFC assessment. For example, plaintiff could have provided the VE with the information from Dr. Daily's reports in order to determine from the VE if this information would impact plaintiff's ability to perform the jobs that had been identified by the VE. However, even when plaintiff's counsel was given the opportunity to present further questions to the VE, plaintiff's counsel chose not to question the VE further regarding the statements by Dr. Daily, and their impact, if any, on plaintiff's ability to perform the jobs that had been identified (R. at 164-167). Because the RFC assessment does not clearly conflict with the opinions of Dr. Daily, including the lack of any evidence that the opinions of Dr. Daily would impact the ability of plaintiff to perform the jobs that had been identified by the VE, the ALJ did not err by failing to expressly discuss his opinions.

Second, plaintiff argues that the ALJ did not consider her impairments of headaches, side effects of medication, and her use of a cane. Although the ALJ did mention that plaintiff had headaches (R. at 21), plaintiff argues that the ALJ erred because he did not provide any analysis of how the headaches affected the plaintiff. However, plaintiff does not cite to any evidence that

14

plaintiff's headaches have any impact on her ability to work. The ALJ is not required to discuss every piece of evidence; he is only required to discuss uncontroverted evidence he chooses not to rely on or significantly probative evidence that he rejected. <u>Clifton</u>, 79 F.2d at 1009-1010. Given the plaintiff's failure to cite to any evidence that plaintiff's impairments had some impact on plaintiff's ability to work, the court finds no error by the ALJ in his analysis of plaintiff's headaches.

Plaintiff also claims error by the ALJ in his consideration of plaintiff's medication. The ALJ noted that plaintiff testified that she takes pain medication which makes her sleepy (R. at 21). However, the ALJ found that plaintiff's statements and testimony were not fully credible. The ALJ's credibility findings will be addressed later in this order.

Finally, plaintiff claims error by the ALJ because he did not consider plaintiff's use of a cane. In his decision, the ALJ did not mention plaintiff's use of a cane. According to SSR 96-9p, cited to by the plaintiff:

> Medically required hand-held assistive device: To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed...
>
> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds,

15

> an individual who uses a medically required
> hand-held assistive device in one hand may
> still have the ability to perform the minimal
> lifting and carrying requirements of many
> sedentary unskilled occupations with the
> other hand...On the other hand, the
> occupational base for an individual who must
> use such a device for balance because of
> significant involvement of both lower
> extremities...may be significantly eroded.

SSR 96-9p, 1996 WL 374185 at *7.  According to Dr. Daily,

plaintiff in April 2007 was able to ambulate without any

assistive devices, although a cane was prescribed that plaintiff

can use at times.  There is no medical evidence that plaintiff

needed hand-held assistive devices in both hands.  In light of

the undisputed medical evidence that indicated that plaintiff

would only occasionally need a hand-held assistive device in one

hand, SSR 96-9p states that such a person may still have the

ability to perform the minimal lifting and carrying requirements

of many sedentary unskilled occupations with the other hand.  On

these facts, the court finds no error by the ALJ in his failure

to address the medical evidence that plaintiff was prescribed a

cane to be used at times.

Third, plaintiff argues that the ALJ did not adequately link

his RFC findings with the evidence.  The ALJ stated that his

findings are in agreement with the medical opinions of the state

agency medical consultants (R. at 22).  The court has reviewed

the physical RFC assessment (R. at 213-222) and a psychological

evaluation by Dr. Moeller (626-642), and finds that the ALJ's RFC

findings are nearly identical to the opinions expressed in these assessments. There is no other medical opinion evidence that provides opinions regarding plaintiff's RFC, other than Dr. Daily's statements, which were previously noted and found not to clearly conflict with the RFC findings of the ALJ. It is therefore abundantly clear that the ALJ's RFC findings rest on the opinions expressed in these two uncontroverted assessments.

There are in fact only two variations between the two assessments and the ALJ's RFC findings. Although the state agency physical RFC assessment found that plaintiff should avoid even moderate exposure to vibrations, the ALJ did not include that limitation in his RFC findings. On the other hand, the ALJ included a limitation that plaintiff avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc. even though this limitation was not in the state agency assessment (R. at 19, 217). No explanation was provided by the ALJ for these variations. The court therefore does not know if these variations were intentional or accidental; the court would note that the two categories are next to each other on the assessment form (R. at 217).

According to SSR 96-9p, few occupations in the unskilled sedentary occupational base require work in environments with vibrations. Even a need to avoid all exposure to this and other environmental conditions would not, by itself, result in a

significant erosion of the occupational base.  SSR 96-9p, 1996 WL 374185 at *9.  Therefore, the failure of the ALJ to either include a limitation to avoid moderate exposure to vibrations or provide an explanation for not including this limitation, on the facts of this case, is harmless error.

Furthermore, the addition of a limitation by the ALJ which is not in the state agency physical RFC assessment is not error because a finding of additional limitations cannot make it more difficult to find that a claimant is disabled, but can only help or assist the claimant in a finding that he is disabled.  Even plaintiff conceded that the inclusion of this limitation was reasonable based on the evidence (Doc. 11 at 15-16).

In summary, the court finds no error by the ALJ in his RFC findings.  The ALJ's RFC findings are based on the state agency assessments and they do not clearly conflict with any medical opinion evidence.

## V.  Did the ALJ err in his credibility analysis?

The framework for the proper analysis of evidence of pain is that the Commissioner must consider (1) whether claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, claimant's pain is in fact disabling.

Kepler v. Chater, 68 F.3d 387, 390-91 (10th Cir. 1995); Thompson
v. Sullivan, 987 F.2d 1482, 1488-89 (10th Cir. 1993); Luna v.
Bowen, 834 F.2d 161, 163-65 (10th Cir. 1987).  If an impairment
is reasonably expected to produce some pain, allegations of
disabling pain emanating from that impairment are sufficiently
consistent to require consideration of all relevant evidence.
For example, an impairment likely to produce some back pain may
reasonably be expected to produce severe back pain in a
particular claimant.  Luna, 834 F.2d at 164.  Symptoms can
sometimes suggest a greater severity of impairment than is
demonstrated by objective and medical findings alone.  Direct
medical evidence of the cause and effect relationship between the
impairment and the degree of claimant's subjective complaints
need not be produced.  Luna, 834 F.2d at 165.  The absence of an
objective medical basis for the degree of severity of pain may
affect the weight to be given to the claimant's subjective
allegations of pain, but a lack of objective corroboration of the
pain's severity cannot justify disregarding those allegations.
When determining the credibility of pain testimony the ALJ should
consider the levels of medication and their effectiveness, the
extensiveness of the attempts (medical or nonmedical) to obtain
relief, the frequency of medical contacts, the nature of daily
activities, subjective measures of credibility that are
peculiarly within the judgment of the ALJ, the motivation of and

relationship between the claimant and other witnesses, and the
consistency or compatibility of nonmedical testimony with
objective medical evidence. <u>Thompson</u>, 987 F.2d at 1489.[1]

Credibility determinations are peculiarly the province of
the finder of fact, and a court will not upset such
determinations when supported by substantial evidence. However,
findings as to credibility should be closely and affirmatively
linked to substantial evidence and not just a conclusion in the
guise of findings. <u>Kepler v. Chater</u>, 68 F.3d 387, 391 (10th Cir.
1995). Furthermore, the ALJ cannot ignore evidence favorable to
the plaintiff. <u>Owen v. Chater</u>, 913 F. Supp. 1413, 1420 (D. Kan.
1995).

When analyzing evidence of pain, the court does not require
a formalistic factor-by-factor recitation of the evidence. So
long as the ALJ sets forth the specific evidence he relies on in
evaluating the claimant's credibility, the ALJ will be deemed to
have satisfied the requirements set forth in <u>Kepler</u>. <u>White v.
Barnhart</u>, 287 F.3d 903, 909 (10th Cir. 2002); <u>Qualls v. Apfel</u>,

_____

[1]The factors listed in the regulations are similar to the
factors noted in <u>Thompson</u>. They are: objective medical evidence;
daily activities; location, duration, frequency, and intensity of
pain or other symptoms; precipitating and aggravating factors;
type, dosage, effectiveness, and side effects of medications
taken to relieve pain or other symptoms; treatment, other than
medication, for pain or other symptoms; measures plaintiff has
taken to relieve pain or other symptoms; and other factors
concerning limitations or restrictions resulting due to pain or
other symptoms. 20 C.F.R. §§ 404.1529(c)(2),(3)(i-vii),
416.929(c)(2),(3)(i-vii).

206 F.3d 1368, 1372 (10th Cir. 2000). Furthermore, the ALJ need not discuss every relevant factor in evaluating pain testimony. Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court. White, 287 F.3d at 909-910.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency

of the evidence.  Although the evidence may support a contrary

finding, the court cannot displace the agency's choice between

two fairly conflicting views, even though the court may have

justifiably made a different choice had the matter been before it

de novo.  <u>Oldham v. Astrue</u>, 509 F.3d 1254, 1257-1258 (10th Cir.

2007).

In discounting plaintiff's credibility, the ALJ noted that

this was plaintiff's eighth application for disability; all

previous applications had been denied (R. at 22).  The court

finds no error when this is considered as one of many factors, as

the ALJ did in this case.  The ALJ also found that plaintiff was

not particularly work-motivated, with lifetime earnings (1976-

2006) of under $30,000.00 (R. at 22, 80-81).  One factor that the

ALJ can properly consider when determining plaintiff's

credibility is plaintiff's earnings and work record.  <u>Bean v.

Chater</u>, 77 F.3d 1210, 1213 (10th Cir. 1995)(claimant's prior work

record can be considered as one of several factors bearing on

claimant's credibility).  Courts have found that substantial

evidence supports an ALJ's conclusion that plaintiff lacks

motivation to work when her work record is poor and/or her wages

are low.  <u>Yeates v. Barnhart</u>, 187 F. Supp.2d 1318, 1333 (D. Kan.

2002).  Therefore, the court finds that the ALJ did not err by

considering plaintiff's prior work record as one of several

factors bearing on plaintiff's credibility.

The ALJ also clearly relied on the medical evidence, including the fact that no doctor who treated or examined the plaintiff found that plaintiff was disabled (R. at 22). There is no medical opinion evidence in the record which clearly conflicts with the ALJ's RFC findings. The ALJ, in making his RFC findings, gave great weight to the medical opinion evidence and discounted plaintiff's allegations of disability or limitations that were greater than the medical opinion evidence. Furthermore, as the ALJ noted, Dr. Moeller, as a result of psychological testing, found that plaintiff appeared to be over-endorsing her degree of current impairment (R. at 22, 631). It is not unreasonable for the ALJ to give greater weight to the medical opinion evidence, especially in light of the opinion of Dr. Moeller that plaintiff appeared to be over-endorsing her degree of current impairment. Furthermore, the court will not reweigh the evidence.

The court finds no error by the ALJ in his credibility analysis. The ALJ set forth the specific evidence he relied on in finding that plaintiff was not as limited as she alleged; the ALJ linked his credibility determination to specific findings of fact fairly derived from the record. The court finds that the ALJ's credibility findings are reasonable; there is sufficient evidence which a reasonable mind might accept as adequate to support the ALJ's credibility findings.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 21st day of December, 2010, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge